# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 11-11068 |
| NEW ORLEANS AUCTION GALLERIES, INC. | SECTION "A" |
| DEBTOR | CHAPTER 11 |

### FINAL ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO INCUR POST-PETITION SECURED INDEBTEDNESS, TO GRANT SECURITY INTEREST AND PRIORITY CLAIMS PURSUANT TO SECTIONS 364(c) AND 364(d) OF THE BANKRUPTCY CODE, MODIFYING AUTOMATIC STAY AND APPROVING AGREEMENTS WITH ASCHAFFENBURG ASSETS, LLC

This matter came before the Court on Thursday April 28, 2011 as a final hearing on the Motion of New Orleans Auction Galleries, Inc., as debtor and debtor-in-possession, ("*Debtor*") dated April 4, 2011 (**P-13**) (the "*Motion*"), as amended, for an Order authorizing the Debtor to (A) obtain interim debtor-in-possession financing; (B) incur post-petition secured indebtedness and debtor-in-possession financing with Aschaffenburg Assets, LLC ("*Lender*"), (C) grant security and administrative priority, modifying the automatic stay, and (D) authorizing execution of loan documents.

Appearances:

Stewart Peck
*Attorney of the Debtor*

J. David Forsyth
*Attorney for Aschaffenburg Assets, L.L.C*

Albert Derbes, IV
*Attorney for Jean Vidos*

Jacob Kansas
*Attorney for Latter & Blum Property Management, Inc*

Edward F. Cahill, Jr.
*Attorney for First Bank & Trust*

Amanda Burnette
*Attorney of U.S. Trustee*

Richard K. Leefe
*Attorney for M.S. Rau Antiques, LLC*

Thomas Lutkewitte
*Attorney for Giuseppe and Allyson Colosimo*

The Court finds as follows:

A. This Court has jurisdiction over the case, these proceedings, and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. This is a core proceeding under 28 U.S.C. §§157(b)(2)(A), (D), (G), (M), and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409;

B. This Court conducted an interim hearing on the Motion on April 4, 2011 (the "*Interim Hearing*") and entered an order granting the interim relief sought by the Debtor (the "*Interim Order*") (**Docket No. 21**).

C. The successful operation of the business of the Debtor and its ability to propose and consummate a rehabilitation of its business and reorganization of its financial affairs is dependent on its ability to obtain the additional loans and advances proposed to be made from Lender;

D. The Debtor is unable to obtain the amount of working capital and credit necessary to successfully maintain its ongoing operations and implement its contemplated plan of reorganization except under the terms and conditions set forth herein;

E. The financing proposed hereunder is in the best interests of the Debtor, its estate, creditors, and parties in interest;

F. Due notice of the Motion has been given to all creditors, parties-in-interest and the Office of the United States Trustee pursuant to Section 102 of the Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001(c) of the Federal Rules of Bankruptcy Procedure and any and all applicable Local Bankruptcy Rules; and

G. Upon reviewing the Motion, the documents presented and the representations of counsel, the evidence adduced and the testimony presented, and the record thereof, the Motion should be granted upon its terms and conditions.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Motion is GRANTED ON A FINAL BASIS and the Debtor is authorized to borrow money of a total principal amount of $500,000.00 (the "**Loan Commitment**") upon entry of this Order, and the Debtor may use such funds as set out in the Budget attached hereto as Exhibit A, subject to any variance agreed to by the Lender.

2. The Debtor is hereby authorized and directed to pay fees to the Lender of one percent (1%) of the total Loan Commitment.

3. The Debtor is hereby authorized and directed to enter into a promissory note, loan documentation and agreements, including a leasehold mortgage affecting the Debtor's primary business premises and a security agreement affecting the Debtor's property governed by the Uniform Commercial Code (collectively, the **"Agreement"**) and the related documents and any UCC-1 Financing Statement (collectively, the **"Lender Documentation"**), with respect to the loans and advances to be made by Lender to the Debtor pursuant to the terms and conditions set forth herein and as provided for hereunder.

4. Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, as security for the loan to be made from Lender to the Debtor, Lender is granted (a) a continuing first and senior lien

and security interest in and to all proceeds of any auctions conducted by the Debtor, including but not limited to the Buyer's Premiums and Commissions, Seller's Side Proceeds or Commissions, Photograph Fees, Drayage Reimbursement and Insurance Reimbursements arising in connection with auctions conducted after the commencement of the above case, except that, should this Court grant First Bank & Trust a senior lien and security interest in Seller's Side Proceeds or Commissions in connection with the Debtor's Cash Collateral Motion (Docket No. 47), Lender's lien and security interest will be subordinate to such interest in Seller's Side Proceeds or Commissions up to amount of $131,000 and no further, (b) a first mortgage upon the leasehold upon which the Debtor operates its business at 801 Magazine Street, New Orleans, Louisiana, and (c) a second position lien and security interest in and to all other assets of the Debtor's estate inferior only to any existing valid liens in favor of First Bank & Trust (all of the foregoing, hereafter referred to as the "***Lender Collateral***").

5. This Order shall be sufficient evidence of Lender's perfected liens and security interests in and to the Lender Collateral and the Debtor is authorized and directed to execute such documents including, without limitation, the Agreement, and the Lender Documentation, and to pay such costs and expenses as may be reasonably required to perfect Lender's security interests in the Lender Collateral as provided herein.

6. The Debtor is authorized and directed to execute and comply with the terms of such other documents, instruments and agreements in addition to the Agreement and Lender Documentation as Lender may reasonably require as evidence of and for the protection and perfection of all of the Debtor's obligations, liens, security interests and mortgages, each of which after execution shall be deemed included in the Lender Documentation.

7. Lender may, in the exercise of its discretion, but shall not be required to, file or serve financing statements, mortgages or other documents with respect to such security interests and liens, all such financing statements or similar documents being deemed to have been filed or recorded at the time and on the date of the commencement of this case.

8. Lender may, in the exercise of its discretion, but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has personal property.

9. The provisions of this Order shall inure to the benefit of Lender and shall be binding upon the Debtor and its respective successors and assigns (including any trustee or other fiduciary herein appointed as a legal representative of the Debtor in this Chapter 11 case or in any succeeding case under Chapter 7 or otherwise) with respect to the property of the estate of the Debtor.

10. The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be necessary to implement the terms and conditions of this Order and the transactions described herein.

11. Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, any and all obligations and liabilities of the Debtor owing to Lender and arising after the date of this Order, together with accrued interest and charges incidental thereto, shall have priority in payment over any other obligations or liabilities now in existence or incurred hereafter by the Debtor and of all expenses of the kind specified in Sections 503(b), 506(c), 507(b) and 552(b) of the Bankruptcy Code, except that there shall be a carve out for accrued, unpaid and budgeted professional fees and costs of Debtor's counsel up to the amount of $75,000.00. Lender's priority claims pursuant to this paragraph, however, will be deemed *pari passu* and determined on a *pro rata* basis with any

super-priority administrative claim granted to First Bank & Trust in connection with the Debtor's Cash Collateral Motion, up to the amount of $131,000 and no further. (**Docket No. 47**).

12. The Lender Documentation shall be subject to termination as provided therein including, without limitation, the provisions that the Lender Documentation is subject to early termination by Lender as to future loans and extensions of credit at any time upon notice to the Debtor or immediately upon the occurrence of any "Event of Default" as defined herein.

13. The Debtor is hereby authorized and directed to promptly reimburse Lender for all approved costs and expenses incurred by Lender to effectuate this financing transaction and as provided in the Lender Documentation including, but not limited to, Court-approved fees of Lender's counsel as set forth in the Budget, and title and recording costs, all of which costs and expenses shall be and are included in the obligations and indebtedness of the Debtor to Lender.

14. In the event of (i) failure of the Debtor to fully perform pursuant to this Order; (ii) the occurrence of any Event of Default under the Lender Documentation; (iii) termination of the Lender Documentation as provided therein; (iv) appointment of a trustee or other fiduciary for the Debtor or the property of the estate of the Debtor; (v) conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (vi) dismissal of the Debtor's Chapter 11 case; and (vii) any change in the existing management of the Debtor (each a "*Default*"); then and upon the occurrence of any Default, and at all times thereafter Lender may file a motion for relief from the automatic stay to exercise its rights to collect those amounts advanced under the Lender Documentation.

15. The automatic stay provided by Section 362 of the Bankruptcy Code shall be and is hereby vacated and terminated with respect to the creation, perfection and implementation of Lender's post-petition liens and security interests in the Lender Collateral.

16. There shall not at any time be entered in the Debtor's Chapter 11 case or any succeeding Chapter 7 case any further order which authorizes (a) the sale, lease or other disposition, out of the ordinary course of business, of property of the estate of the Debtor in which Lender has an interest or (b) under Section 364 of the Bankruptcy Code, the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to the liens or security interests held by Lender, or which is entitled to priority administrative status which is equal to or superior to that granted to Lender herein, up to the amount of $131,000 and no further, unless in either case (i) Lender shall have given its prior written consent thereto; and (ii) Debtor files an appropriate motion and obtains approval of same by this Court.

17. The provisions of this Order and any action pursuant thereto shall be and remain in effect unimpaired and shall survive entry of any order converting this case from Chapter 11 to Chapter 7 and the terms and provisions of this Order, as well as the priorities, liens and security interests created hereunder, shall continue in this or any other superseding case under the Bankruptcy Code, and such liens and security interests shall maintain that priority as provided for in this Order until satisfied and discharged in full.

18. Lender shall be entitled to the full protection of the provisions of Section 364(e) of the Bankruptcy Code with respect to debts and obligations and liens and security interests created or authorized by this Order in the event that this Order or any other authority contained herein is vacated, reversed, or modified on appeal or otherwise by any court of competent jurisdiction.

19. The Debtor, acting through its President, Jean Vidos, shall have authority to bind the Debtor. The signature of Jean Vidos, as President of the Debtor, or any person designated in writing by the Debtor and appearing on any one or more of the Lender Documentation or other

related documentation in the opinion of Lender necessary or desirable to implement the terms and purposes of this Order, shall bind the Debtor.

20. This Order has been negotiated in good faith and at arm's length between the Debtor and Lender, and any credit extended and loans made to the Debtor pursuant to this Order shall be deemed to be extended in good faith as that term is used in Section 364(e) of the Bankruptcy Code.

21. The stay of this Order pursuant to Bankruptcy Rule 6004(h) shall not apply, and the relief herein granted is effective immediately upon entry of this Order.

22. In the event, and to the extent that any of the terms and conditions of any agreements between the Debtor and Lender are inconsistent or at variance with the terms and provisions of this Order, the terms of this Order shall control.

23. Unless otherwise previously paid in full, agreed to by Lender, or otherwise directed pursuant to a confirmed plan of reorganization, all amounts owed by the Debtor under the Lender Documentation authorized by this Order, and secured by the Lender Collateral shall be paid in full upon the earlier of (a) approval of any replacement debtor-in-possession financing; (b) the effective date of a confirmed plan of reorganization in this bankruptcy case (and such repayment shall be a condition precedent to the effective date of such plan); (c) the loan's maturity on August 31, 2011, or (d) an uncured Event of Default. However, the termination and maturity date may be extended by the consent of the Lender.

24. For purposes of this Final Order and Lender Documentation, the following events, acts, or omissions or failures to act shall constitute "***Events of Default***":

    a. any failure of the Debtor to fully perform pursuant to this Final Order;

b. the entry of an Order appointing a trustee or other fiduciary for the Debtor or the property of the estate of the Debtor;

c. the entry of an Order converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code;

d. the entry of an Order dismissing the Debtor's Chapter 11 case;

e. the removal of existing management of the Debtor; or

25. The Debtor, and only the Debtor, is authorized to use the proceeds of the Loan Commitment. Unless otherwise expressly agreed to in writing by Lender and approved by this Court, the proceeds of the Loan Commitment shall be used by the Debtor exclusively for the purposes identified in the Budget, and then only in the approximate amounts set forth therein, subject to agreed variance agreed to by the Lender.

26. This Final Order shall be effective immediately upon entry by the Court, without the need to wait for any period of time as set forth in the Bankruptcy Code or Bankruptcy Rules.

New Orleans, Louisiana, May 9, 2011.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

NEW ORLEANS AUCTION GALLERIES
Thirteen Week Budget
Beginning May 1, 2011

|  | APRIL | MAY | JUN | JULY |
|---|---|---|---|---|
| Bank Balance May 1, 2011 |  | $260,000 | $43,029 | $287,132 |
| **CASH RECEIPTS** |  |  |  |  |
| Auction revenue |  |  | 400,000 | 80,000 |
| DIP loan |  | 500,000 |  |  |
| **Total Cash Available** |  | 760,000 | 443,029 | 367,132 |
|  |  |  |  |  |
| **GENERAL EXPENSES** |  |  |  |  |
| Auto expense |  | 789 | 789 | 789 |
| Computer licensing fees (Droage) |  | 800 | 800 | 800 |
| Computer art reference fees |  | 500 | 500 | 500 |
| Computer repairs & programing |  | 500 | 500 | 500 |
| DIP loan interest |  |  | 5,000 | 5,000 |
| Drayage |  | 3,500 | 3,500 | 3,500 |
| Health Insurance |  | 1,500 | 1,500 | 1,500 |
| Insurance |  | 5,000 | 5,000 | 5,000 |
| Janitor |  | 350 | 350 | 350 |
| Miscellaneous |  | 2,000 | 2,000 | 2,000 |
| Office supplies & expense |  | 2,000 | 2,000 | 2,000 |
| Packing material |  | 2,000 | 2,000 | 2,000 |
| Parking |  | 950 | 950 | 950 |
| Payroll taxes (8%) |  | 6,295 | 6,295 | 7,869 |
| Photography |  | 6,775 | 2,000 | 6,775 |
| Postage Office |  | 600 | 600 | 600 |
| R & M building |  | 1,500 | 1,500 | 1,500 |
| Referral fees |  | 1,000 | 1,000 | 1,000 |
| Rent |  | 7,900 | 7,900 | 7,900 |
| Restoration |  | 1,000 | 1,000 | 1,000 |
| Returns and allowances |  | 1,000 | 1,000 | 1,000 |
| Salaries |  | 71,000 | 71,000 | 88,750 |
| Salary - Jean Vidos |  | 7,692 | 7,692 | 9,615 |
| Security systems |  | 120 | 120 | 120 |
| Telephone |  | 3,100 | 3,100 | 3,100 |
| Trash service |  | 350 | 350 | 350 |
| Travel |  | 1,200 | 1,200 | 1,200 |
| UPS & Fed EX |  | 250 | 250 | 250 |
| Utilities |  | 3,000 | 3,000 | 3,000 |
| Utility deposit |  | 4,000 | 4,000 |  |
|  |  |  |  |  |
| Total General Expenses |  | 132,671 | 132,896 | 158,918 |

# NEW ORLEANS AUCTION GALLERIES
## Thirteen Week Budget
### Beginning May 1, 2011

| AUCTION EXPENSES | | | | |
|---|---|---|---|---|
| Professional fees | | 3,000 | | 3,000 |
| Live Auction expense | | 3,600 | | 3,600 |
| Preview parties | | | 2,500 | |
| Extra auction labor | | 1,500 | 3,000 | 1,500 |
| Advertising | | 7,700 | | 7,700 |
| Catalogue | | 20,000 | 10,000 | 20,000 |
| Postage | | 7,500 | | 7,500 |
| Contract Labor | | | 500 | |
| Equipment rental | | | 500 | |
| Miscellaneous auction expenses | | 1,000 | 1,500 | 1,000 |
| | | | | |
| **Total Auction Expenses** | | 44,300 | 18,000 | 44,300 |
| | | | | |
| **BANKRUPTCY EXPENSES** | | | | |
| Trustee | | | | 20,000 |
| DIP lender legal expenses | | 10,000 | 5,000 | 2,500 |
| | | | | |
| **Total Bankruptcy Expenses** | - | 10,000 | 5,000 | 22,500 |
| | | | | |
| **OTHER DISBURSEMENTS** | | | | |
| January consignors | | 530,000 | | |
| | | | | |
| **Total Monthly Cash Disbursements** | | 716,971 | 155,896 | 225,718 |
| | | | | |
| **Cash Balance At Month End** | | 43,029 | 287,132 | 141,414 |
| | | | | |
| **ACCRUED ADMINISTRATIVE EXPENSES** | | | | |
| Debtor's legal expense | 50,000 | 25,000 | 25,000 | 25,000 |
| Accountant expense | 8,500 | 5,000 | 5,000 | 6,500 |
| DIP lender advisory fee | | 10,000 | 10,000 | 10,000 |
| DIP loan fee | | 10,000 | | |
| DIP loan interest | | 5,000 | 5,000 | 5,000 |
| Financial Advisor | | | 18,000 | |
| | | | | |
| **Total Accrued Administrative Expenses** | 58,500 | 55,000 | 45,000 | 46,500 |
| | | | | |
| **Total Disbursements and Accruals** | | 771,971 | 200,896 | 272,218 |

Notes:
Assume Auctions held beginning of June and August.
The DIP lenders monthly hourly fees will be accrued and are not reflected on this cash flow analysis.