UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                              CASE NO.

**NEW ORLEANS AUCTION GALLERIES, INC.**                         **11-11068**
                                                                                   SECTION A
DEBTOR(S)                                                                 CHAPTER 11

## REASONS FOR DECISION

On February 28, 2013, the Application for Administrative Expense[1] of Gambel Communications, L.L.C. ("GC") came before the Court.  At the conclusion of the hearing, the Court took the matter under advisement.

### I.  Factual Background

On April 1, 2011, New Orleans Auction Galleries, Inc. ("NOAG") filed a petition for bankruptcy relief under chapter 11 of the United States Bankruptcy Code.

Postpetition, on August 26, 2011, NOAG entered into a "Professional Services Contract" ("the Contract") with GC for public relations services.[2]

GC knew that NOAG was in bankruptcy.  Neither NOAG nor GC sought Court approval to enter into the Contract.

The Contract provided that GC would receive a flat rate of $7,500.00[3] for the first month, due on signing.  Beginning on October 22, 2011, and each month thereafter, NOAG would pay GC

---

[1] Docket no. 571.

[2] Exhibit A.  The Contract is dated August 26, 2011, but shows that it was revised on October 4, 2011.

[3] The Contract provides that the initial retainer of $7,500 is based on fifty (50) hours of work during the first month.

a monthly retainer of $4,500.00.[4]  NOAG would be billed separately for "[i]ncidental costs such as postage, travel, parking, PR resources, copies, special event needs, etc."

Pursuant to the Contract, NOAG paid GC the following amounts, which total $26,435.43:

| Date | Amount |
|---|---|
| September 26, 2011 | $7,500.00 |
| November 4, 2011 | $4,594.14 |
| November 22, 2011 | $5,215.00 |
| January 3, 2012 | $4,585.63 |
| January 3, 2012 | $4,540.66[5] |

The hearing on confirmation of NOAG's Sixth Amended Plan of Reorganization with Immaterial Modifications ("Plan") was held on May 25, 2012.  The Plan contemplated a sale of substantially all of NOAG's assets.   At the confirmation hearing, NOAG's counsel represented to the Court that bids for the purchase of NOAG's assets were due on Monday, May 28, 2012.  The Court approved the Plan, and on June 1, 2012, the Court entered the confirmation order.[6]

The Plan provides that  proof of administrative claims, other than a claim  incurred by NOAG in the ordinary course of business, must be filed no later than thirty (30) days after confirmation.[7]

---

[4] The Contract provides that the monthly retainer of $4,500 is based on thirty (30) hours of work per month.

[5] Exhibit J.

[6] Docket no. 456.

[7] Docket no. 423, ¶ 3.1(b).

In late May 2012, GC became aware that NOAG was sold. GC continued to perform work for NOAG through June 13, 2012.

GC is seeking payment for services rendered and costs incurred from January 22, 2012, through June 13, 2012[8]:

| Invoice Date | Amount |
|---|---|
| January 31, 2012 | $4,563.00 |
| February, 29, 2012 | $4,582.45 |
| March 26, 2012 | $4,540.00 |
| April 30, 2012 | $4,540.00 |
| May 31, 2012 | $4,540.00[9] |
| June 30, 2012 | 684.25 |

The total amount for which GC is seeking payment is $23,449.68, for a total of 65.25 hours worked.

From November 1, 2011, through June 13, 2012, GC spent a total of 118.15 hours working for NOAG.[10]

Prior to entering the Contract with GC, NOAG had not used a public relations firm in fifteen (15) years.

---

[8] Exhibit D, GC's timesheets, show June 13, 2012, as the last date on which services were performed.

[9] Exhibits B and C.

[10] Exhibit D. While Betsie Gambel testified that GC began work on September 22, 2011, the only timesheets introduced into evidence begin with November 1, 2011.

GC alleges that it should be paid as an administrative expense because it performed services benefitting the estate pursuant to 11 U.S.C. § 503(b)(1)(A).[11]  GC contends that the services it performed for NOAG were incurred in the ordinary course of NOAG's operation, such that the Plan deadline for filing administrative expense claims does not apply.   David Adler, Trustee of the NOAG Litigation Trust ("Trustee"), disagrees.

## II.  Law and Analysis

A trustee or debtor in possession must apply for authorization to employ a professional.[12] The application must disclose the compensation arrangement.   After a professional is approved, she must then apply for compensation prior to being paid.[13]   The Court may award reasonable compensation.[14]

GC's Contract is titled, "Professional Services Contract," and its owner, Betsie Gambel testified that she considers herself a professional.    A professional is "someone with special knowledge and skill usually achieved through study and educational attainments whether or licensed or not."[15]   GC's owner, Betise Gambel, has been in the public relations business for thirty (30) years.  GC's employee, Katie Fauquier, who performed most of the work,  has a masters degree in

---

[11] All subsequent references to "section" refer to Title 11 of the U. S. Code.

[12] 11 U.S.C. § 327; FRBP 2014.

[13] 11 U.S.C. § 330; FRBP 2016.

[14] 11 U.S.C. § 330.

[15] *In re Metropolitan Hosp.*, 119 B.R. 910, 916 (Bankr.E.D.Pa. 1990).

communications.    The Court finds that GC is a professional who should have applied for employment pursuant to section 327.[16]

The purpose of approval of professional employment is "to permit prior judicial oversight into the necessity and legality of the terms of employment."[17]  Had an application for employment been made, the Court would have seriously scrutinized a retainer agreement of this magnitude.

GC bears the burden of proving that its fees should be allowed.[18]  Even had the Court approved GC's employment, it would bear the burden of proving the reasonableness of its fees.[19]  Generally, the consequence of failure to follow to comply with Bankruptcy Code is denial of compensation.[20]  The Court could also require GC to disgorge the unauthorized fees that it already received.[21]  The decision whether or not to require disgorgement is in the Court's discretion.[22]

---

[16] *See, In re Microwave Products of America, Inc.*, 94 B.R. 971 (Bankr.W.D.Tenn. 1989) (A public relations firm is a professional that must be authorized pursuant to section 327).

[17] *In re American Trawler Corp.*, 24 B.R. 505, 506 (Bankr.Me. 1982).

[18] *Woods v. City Nat. Bank & Trust Co. of Chicago*, 312 U.S. 262, 268, 61 S.Ct. 493, 497 (1941).

[19] *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La. 1986).

[20] *Anderson v. Anderson (In re Anderson)*, 936 F.2d 199, 204 (5th Cir. 1991).  *Also see, In re Leek*, 128 B.R. 832 (Bankr.M.D.Fla. 1991); *In re Shirly*, 134 B.R. 940 (9th Cir. BAP 1992).

[21] *In re McCrary & Dunlap Const. Co., LLC*, 79 Fed.Appx 770 (6th Cir. 2003) (Courts can order disgorgement of unauthorized fees even if employment of the professional was approved.)  *Also see, In re Farrington*, 2007 WL 4365753 (Bankr.D.Or. 2007).

[22] *In re Kowalski*, 402 B.R. 843, 848 (Bankr.N.D.Ill. 2009).

Further, even assuming GC's employment had been approved by the Court, its claim for compensation would have been outside the ordinary course of business.[23]  NOAG had not employed a public relations firm in the fifteen (15) years prior to filing for bankruptcy, and GC did not present any evidence that a public relations firm was an ordinary expense in this type of industry.  In fact, Betsie Gambel testified that she performed no services directly related to preserving or re-establishing NOAG's reputation after filing bankruptcy.

The Plan provides that  proof of administrative claim, other than a claim incurred by NOAG in the ordinary course of business, must be filed no later than thirty (30) days after confirmation.[24]  GC's application for administrative claim was not filed within thirty (30) days of confirmation.

Although GC was not on NOAG's mailing matrix, Betsie Gambel testified that she was aware from the inception of the Contract that NOAG was in bankruptcy and that she followed the case in the press through "Google alerts."  GC had a responsibility to seek advice of counsel as to whether Court approval for employment and payment were required.[25]

Betsie Gambel also testified that she was aware in May 2012 that NOAG had been sold.  The Plan was not confirmed until June 1, 2012, giving her time to inquire with the Court or an attorney about her application or payment on the Contract.

---

[23] The Plan defines "administrative claim" to include "Professional Charges of the Chapter 11 Professionals Allowed under Section 503(b)." Docket no. 423, p. 1.

[24] Docket no. 423, ¶ 3.1(b).

[25] *See, In re Hurricane Technological Systems, Corp.*, 443 B.R. 575, 586 (Bankr.D.Puerto Rico 2011) (Professional whose application for employment was tardy had the responsibility of following the requirements of F.R.B.P. 2014.)

Betsie Gambel testified that her services were designed to expand NOAG's market and brand, thereby increasing sales. She proved no direct benefit from these services. While the auction in October 2011 was promising, all subsequent auctions decreased to normal historical ranges. By January 2012, it was clear to NOAG that a sale of the business, probably to its creditors, was its only recourse.

GC has already received $26,435.43 in payments from NOAG. GC's time sheets indicate that it spent a total of 118.15 hours working for NOAG.[26] Betsie Gambel testified that the monthly retainer is based on an hourly rate of $150.00. If the hourly rate was applied, rather than the flat monthly retainer, GC earned $17,722.50. Accordingly, GC has already been well-compensated for its time. *In lieu* of disgorgement of those fees, the Court will allow GC to retain the fees already received but denies approval of $23,449.68 for services rendered from January 22, 2012, through June 13, 2012.[27]

Accordingly, the Application for Administrative Expense[28] of Gambel Communications, L.L.C. is denied. A separate Order will be entered in accord with these Reasons.

New Orleans, Louisiana, March 25, 2013.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[26] Exhibit D. While Betsie Gambel testified that GC began work on September 22, 2011, the only timesheets introduced into evidence begin with November 1, 2011.

[27] The Court notes that Trustee did not seek disgorgement.

[28] Docket no. 571.

7